IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLORY SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| KATHY BUTLER LOVIES, KALA SIMS ROBINSON, MATT PAYNE, RHONNA MEDLIN, LAURA QUALLS, WANDA EVANS, CHEYL COUCH, SHICKER, MARVIN POWERS, WENDY BLANK, SMITH, RAMSEY, CHAD PERRISH, TERRI ANDERSON, and JAGANNATHAN SRINIVASARAGHAVAN, | ) ) ) ) ) ) ) No. 13-cv-1215-MJR-SCW ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

REAGAN, Chief Judge:

### INTRODUCTION AND PROCEDURAL BACKGROUND

On November 22, 2013, Plaintiff Allory Smith (an inmate in the Illinois Department of Corrections) filed a § 1983 civil rights complaints alleging Defendants violated several of his constitutional rights. At § 1915A threshold review, the undersigned found that Plaintiff stated constitutional claims against all Defendants for (1) retaliating against him for complaining, (2) a failure to treat Plaintiff's depression

1

and knee injury, and (3) a claim for conspiracy. (Doc. 8). The case is before the court on three motions for summary judgment re: Plaintiff's purported failure to exhaust his administrative remedies before filing suit.

The first dispositive motion (Doc. 83), filed by Defendants Qualls, Evans, Medlin, and Sims Robinson, ripened in June 2014. (Doc. 93).[1] Plaintiff, in his response, agrees to voluntarily dismiss Qualls, Evans, and Medlin. Effectively ceding that he did not exhaust administrative remedies as to those Defendants, Plaintiff's claims against Qualls, Evans, and Medlin are DISMISSED without prejudice.

The second dispositive motion was filed by Defendants Anderson, Blank, Couch, Perrish, Ramsey, Smith, and Shicker (the "IDOC Defendants"). Plaintiff filed a response in which he admitted he is still pursuing administrative remedies against all IDOC Defendants save Couch, and requesting those Defendants be dismissed without prejudice. The Court, noting that Plaintiff has ceded the issue, DISMISSES Defendants Anderson, Blank, Perrish, Ramsey, Smith, and Shicker without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (plaintiff cannot file suit then exhaust his administrative remedies while suit is pending).

Finally, Defendant Srinivasaraghavan, who was served after the other Defendants, filed his Motion for Summary Judgment for Plaintiff's failure to exhaust administrative remedies on June 13, 2014. Plaintiff never filed a Response to this Motion, and the time to do so has lapsed, making the motion ripe for disposition.

---

[1] Plaintiff actually filed two responses to Doc. 83, but the latter (Doc. 94) appears to be a handwritten copy of the former (also handwritten) document (Doc. 93). The undersigned will rely on the earlier-filed response; the substance of the two briefs is in any event largely identical. Because Defendant Sims Robinson did not plead exceptional circumstances in filing a June 2014 reply brief, the Court will not consider that reply. *See* SDIL–LR 7.1(c).

2

In short, the Court must assess the dispositive motions of Defendants Sims Robinson, Couch, and Srinivasaraghavan.

## LEGAL STANDARDS

### 1. *Summary Judgment at the Exhaustion Stage*

The instant dispositive motion is brought pursuant to the regime announced in *Pavey v. Conley*, the case in which the Seventh Circuit announced the procedures for determining whether a prisoner has exhausted his administrative remedies. In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). A Motion for Summary Judgment filed pursuant to *Pavey* typically requires a hearing to determine any contested issues regarding exhaustion, and (unlike standard summary judgment motions) a judge may make limited findings of fact at that time. *Id.* at 742. The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Id.* A hearing is not required where "there are no disputed facts regarding exhaustion." *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009). Here, no hearing is required, since Plaintiff's failure to respond acts as an admission of the merits (or, rather, the factual bases) of the motions.

### 2. *PLRA's Exhaustion Requirement*

Suits brought by prisoners are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997e. PLRA requires a prisoner to first exhaust all administrative remedies available before bringing an action concerning prison

3

conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement of the PLRA is dependent upon the procedures established by the state in which the prison is located. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Unexhausted claims may not be brought to court. *Jones*, 549 U.S. at 211 (citing *Porter v. Nussell*, 534 U.S. 516, 524 (2002)).

The Seventh Circuit requires strict compliance in regards to exhaustion. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* at 1025. If the prisoner fails to comply with the established procedures, including time restraints, the court will not consider the grievance. *Pavey*, 663 F.3d at 903.

The purpose of the exhaustion requirement is two-fold. *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992). First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); *Woodford v. Ngo*, 548 U.S. 81, 89-90 (2006). Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524; *see Booth v. Churner*, 532 U.S. 731, 737 (2001) (noting that PLRA's requirement will help "filter out some frivolous claims.").

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait until he has completed the established process and may not file in anticipation that administrative remedies will soon be exhausted. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C § 1997e(a)); *Ford v.*

4

*Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted while the suit is pending. *Perez*, 182 F.3d at 535.

### 3. Exhaustion Requirement under Illinois Law

Inmates confined in the Illinois Department of Corrections must adhere to the Department's Grievance Procedures for Offenders in order to properly exhaust claims; anything less is a failure to exhaust. 20 Ill. Admin. Code § 504.810. The prisoner must first speak with their Counselor about the issues they raise, and if the dispute is not resolved, the grievance must be filed within sixty days of the events or occurrence with the Grievance Officer. 20 Ill. Admin. Code § 504.810(a). The grievance must:

> Contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code § 504.810(b). The grievance officer must then review the grievance and report findings and recommendations to the Chief Administrative Officer ("Warden"). 20 Ill. Adm. Code § 504.830(d). The prisoner then has the opportunity to review the Warden's response, and if he is unsatisfied, he may appeal to the Director through the Administrative Review Board ("ARB") within 30 days of the Warden's response. 20 Ill. Adm. Code § 504.830(d); 20 Ill. Adm. Code § 504.850. The ARB is then required to provide a written report to the Director of its recommendation on the grievance and the Director "shall review the findings and recommendations of the

Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code § 504.850(e), (f).

## PLAINTIFF'S GRIEVANCES

As noted above, at issue is whether Plaintiff has exhausted his administrative remedies as to Defendants Sims Robinson, Couch, and Srinivasaraghavan.

### 1. *Grievances re: Defendant Sims Robinson*

Plaintiff alleges he named Sims Robinson in a grievance dated August 15, 2012, numbered 12-08-27. (Doc. 93). In that grievance, he describes how Defendant Butler Lovies denied him medication on July 23 and 24. (Doc. 84-2, p. 12). He further alleged that on July 24, 2012, two guards witnessed Plaintiff cut his left knee. (Doc. 84-2, p. 12). Those guards, along with Butler Lovies and yet another guard, refused to do anything about Plaintiff's cut knee. (Doc. 84-2. p. 12).

The grievance further states that Plaintiff let Sims Robinson know about his issues on July 24, 2012. (Doc. 84-2, p. 12). Plaintiff's grievance states that Sims Robinson told him that she could not open the doors of the cell at that time to address the issue, and that Plaintiff would have to wait until the morning. (Doc. 84-2, p. 13). Plaintiff's grievance states that Payne was the morning shift nurse, and that Payne told him he would do something about the cut on Plaintiff's knee but then did nothing. (Doc. 84-2, p. 13). Finally, Plaintiff's grievance states that C/O Russell called mental health for Plaintiff. (Doc. 84-2, p. 13). The grievance requests that Butler Lovies stop

refusing him medication, that IA investigate the entire affair, and that Plaintiff's past grievances be answered. (Doc. 84-2, p. 12).

The counselor received this grievance on August 16, 2012. (Doc. 84-2, p. 12). That same day, the grievance counselor determined that the grievance was a duplicate of Plaintiff's earlier filed grievances, which were still pending. (Doc. 84-2, p. 12). The grievance officer received the grievance on August 22, 2012. (Doc. 84-2, p. 14). The officer recommended that the grievance be denied as a duplicate grievance on August 26, 2012; the CAO concurred on August 27, 2012. (Doc. 84-2, p. 14). The ARB received the grievance on August 31, 2012 and denied it as duplicative of grievance No. 12-07-39. (Doc. 1, p. 30).

### 2. *Grievance re: Defendant Couch*

Plaintiff filed a grievance dated August 19, 2012 (and numbered 12-09-0006) against Defendant Couch, alleging that she falsified his chart. (Doc. 84-2, p. 5). Specifically, Plaintiff alleged that he told Couch that he cut himself because he heard voices in his head after he did not take his medication; Couch falsely charted that Plaintiff told her that he cut himself to get back at Butler Lovies. (Doc. 84-2, pp. 5-6).

The counselor received the grievance on August 20, 2012 and responded on August 27, 2012. (Doc. 84-2, p. 5). The grievance office received a copy of this grievance on September 4, 2012, along with two others regarding Bulter Lovies' refusal to give Plaintiff his psychotropic medication. (Doc. 84-2, p. 11). The grievance officer recommended that the grievance be denied. (Doc. 84-2, p. 11). The CAO received the grievance on October 18, 2012 and concurred on October 19, 2012. (Doc. 84-2, p. 11).

7

Plaintiff sent the grievance to the ARB, as reflected above, on October 26, 2012 and they rejected it on July 30, 2013. (Doc. 1, p. 25).

## ANALYSIS

### 1. *Defendant Kala Sims Robinson*

Turning to Defendant Sims Robinson, the Court finds that Plaintiff exhausted his remedies as to her, but only as to some of his claims.

Plaintiff's Complaint alleges that Sims Robinson refused to provide Plaintiff with his prescribed medication on several separate occasions due to his complaints about her job performance. (Doc. 1, pp. 9-10). Plaintiff further alleges that he told Sims Robinson that he had cut his knee and that she told Plaintiff that he should not have cut himself and maliciously refused Plaintiff's request for treatment. (Doc. 1, p. 15). Plaintiff also alleges that Sims falsified medical records and conspired with the other Defendant to deprive Plaintiff of medical care. (Doc. 1, pp. 17-18). By way of contrast, Plaintiff's grievances discuss *one* instance where he asked Sims Robinson for help with his "issues," and she responded that she could not help him at that time because the cell doors were already closed. That grievance requests no relief against Sims Robinson.

Defendants argue that Plaintiff did not allege that Sims Robinson was deliberately indifferent because he did not state that she *failed* to do anything. The Court does not find this argument compelling. Plaintiff's grievance, broadly construed, shows that Plaintiff asked Sims Robinson for treatment (for a plainly obvious injury) and that she refused. Therefore Plaintiff has exhausted his claim of deliberate indifference as to Sims Robinson.

8

However, because the grievance specifically states that Sims Robinson did not examine Plaintiff because she could not open the cell doors at that time, and makes no mention about Plaintiff's previous complaints about Sims Robinson (much less that she spoke about / was aware of any other Defendant's relationship to Plaintiff's care), the Court will DISMISS Plaintiff's retaliation and conspiracy claims against Defendant Sims Robinson without prejudice.

### 2. *Defendant Couch*

Defendant Couch is listed in the August 19, 2012, grievance and the December 28, 2012 grievance. The December 28 grievance was denied as being filed more than 60 days after the events at issue. The Court finds nothing incorrect about this conclusion; this grievance cannot be grounds for exhausting any of Plaintiff's claims because it is clear that he did not file it within 60 days of the incident, as required by the Illinois Administrative Code. The August 19, 2012 grievance, however, both names Couch and was properly exhausted.

But Couch is correct that Plaintiff is limited to the claims reflected in that grievance, which asserts that Couch falsified medical records. Plaintiff is therefore barred from alleging, as he does in his Complaint, that Couch denied Plaintiff therapy, refused to take him to therapy, ignored his knee injury, or disregarded his request for treatment for his mental health issues. Because the August 19, 2012 grievance does frame the issue as a "conspiracy," the Court will allow that claim to proceed. Plaintiff's claim for retaliation also remains colorable due to the timing of this grievance—it is clear that Plaintiff had already filed grievances against other medical staff based on

9

the July 23 and 24 incidents at the time he grieved Couch's conduct. Plaintiff's claim against Couch for deliberate indifference will be DISMISSED without prejudice.

### 3. Defendant Srinivasaraghavan

Srinivasaraghavan alleges that he was not named or described in any of the relevant grievances. The Court's review has likewise not revealed any grievances that name Srinvasaraghavan or describe him. Additionally, although he responded to the other defendants' motions for summary judgment, Plaintiff filed no response to this Motion. In this judicial district, failure to timely respond to a motion may be considered an admission of the motion's merits. SDIL-LR 7.1(c); *Whitfield v. Snyder*, 263 F. App'x 518, 521 (7th Cir. 2008). As Plaintiff did not respond to the pending Motion, and the Court can find no suggestion in the record that he actually exhausted his administrative remedies as to Srinivasaraghavan, the Court GRANTS the third Motion for Summary Judgment and DISMISSES the claims against Srinvasaraghavan without prejudice.

## CONCLUSION

Defendants Qualls, Evans, Medlin, Anderson, Blank, Perrish, Ramsey, Smith, and Shicker are DISMISSED without prejudice due to Plaintiff's abandonment of the notion that he exhausted administrative remedies as to those Defendants.

Defendant Sims Robinson's summary judgment motion (Doc. 83) is GRANTED IN PART. Only the deliberate indifference claim against Defendant Sims Robinson survives.

Defendant Couch's summary judgment motion (Doc. 88) is likewise **GRANTED IN PART**. The deliberate indifference claim against Couch is dismissed, but the case will proceed as to Plaintiff's retaliation and conspiracy claims against her.

Defendant Srinivasaraghavan's Motion for Summary Judgment (Doc. 105) is **GRANTED**; the claims against him are **DISMISSED** without prejudice.

What remains for trial are the following Defendants and claims:

**Count 1: First Amendment Retaliation** against Defendants Butler Lovies, Payne, Powers and Couch.

**Count 2: Eighth Amendment Deliberate Indifference** against Defendants Butler Lovies, Payne, Powers, and Sims Robinson.

**Count 3: Conspiracy** against Defendants Butler Lovies, Payne, Powers, and Couch.

IT IS SO ORDERED.
DATED: January 5, 2015

s/ *Michael J. Reagan*
Michael J. Reagan
Chief Judge
UNITED STATES DISTRICT COURT